[Alabama Consolidated C. & I. Co. v. Heald.]

# Alabama Consolidated C. & I. Co. v. Heald.

## Damages for Death of Employee.

(Decided April 13, 1911.   Rehearing denied May 5, 1911.
55 South 181.)

1. *Actions; Misjoinder of Causes; Death of Servant.*—A complaint which in one count states a good cause of action in negligence for a failure to maintain a reasonably safe place for decedent's work, and in another count states a good cause of action for negligent order to go into a mine containing a large quantity of suffocating gas, and in another count alleging a defect in the ways, works, machinery, etc., is not subject to demurrer for a misjoinder of causes of action under different subdivisions of the Employers' Liability Act.

2. *Master and Servant; Cause of Accident; Jury Question.*—Under the facts in this case, it was for the jury to determine whether decedent's death was caused from an unavoidable accident or from defendant's negligence in failing to keep the machinery in proper repair.

3. *Same; Instructions.*—In an action for the death of a servant a charge asserting that the master and servant do not stand upon equal privileges even when they have knowledge of the danger, the position of the servant being subordinated to that of the master, and that the servant was entitled to rely on the master's superior skill, and if, being ordered into a dangerous position, he obeys and is injured, he will not be guilty of contributory negligence, unless the danger is so glaring that a reasonably prudent man would not have entered it, is a correct statement of law.

4. *Evidence; On Former Trial; Change of Parties.*—Where an action for the wrongful death of a servant was originally begun by his administrator, the fact that a subsequent trial was prosecuted by his administrator de bonis non did not render evidence otherwise admissible on the former trial inadmissible on a subsequent trial.

5. *Death; Damages; Evidence.*—In an action for the wrongful death of a servant a question as to what a job paid, not limited as to time or earnings of decedent, was irrelevant.

6. *Same.*—A question as to the servant's salary not confined to any particular time or occasion was irrevalent.

7. *Appeal and Error; Law of the Case; Former Trial.*—Rulings on a former trial on appeal on a question of evidence is the law of the case on a re-trial.

8. *Same; Review; Assignment; Requisite.*—Where the record fails to show the question on which the objection and exception was based, an assignment of error as to the exclusion of the question will not be reviewed on appeal.

9. *Same; Objections; Necessity.*—A ruling on evidence will not be reviewed in the absence of a proper objection made and exceptions reserved thereto.

10. *Same; Review; Instructions.*—The courts will place that construction on instructions which will sustain rather than condemn them, if the instructions are susceptible of such construction.

11. *Trial; Reception of Evidence; Objections.*—Where a general objection is made to evidence, and it is good to only a part thereof, the objection is properly overruled.

12. *Charge of Court; Duty to Request; Misleading Instructions.*— When a correct charge is given, and it is supposed by the opposite party to be misleading, it becomes his duty to request an explanatory charge.

13. *Same; Sufficiency of Evidence.*—There is no duty resting on the trial court to charge that there is no evidence of a given fact, and hence, the refusal of such a charge is not error.

APPEAL from Etowah Circuit Court.

Heard before Hon. JOHN W. INZER.

Action by Ada V. Heald, as administratrix, for damages for the death of her intestate, an employee, against the Alabama Consolidated Coal & Iron Company. Judgment for plaintiff, and defendant appeals. Affirmed.

The following was the complaint on which the case was tried: Count 2; "Plaintiff, who sues as administratrix of the estate of R. W. Heald, deceased, claims of the defendant, a body corporate doing business in Etowah county, state of Alabama, $30,000 damages, for that on, to wit, April 11, 1905, plaintiff's intestate, while in the employment of the defendant, and while engaged in the actual performance of the duties of such employment, was killed by being suffocated to death in a mine operated by the defendant in the county and state aforesaid. Plaintiff avers the death of her intestate was proximately caused by the negligence of the defendant, which negligence consisted in this: The defendant negligently failed to maintain a reasonably safe and secure place for plaintiff's intestate to perform the duties of his employment, in that the defendant negligently allowed one of its mines at which plaintiff's intestate was employed to

contain a large and dangerous quantity of suffocating gas." Count 3: Same as 2, down to and including the words, "county and state aforesaid," and adds: "Plaintiff avers the death of her intestate to have been proximately caused by reason of the negligence of James Dunn, a person in the service or the employment of defendant, to whose orders or directions the plaintiff's intestate, at the time of his death, was bound to conform, and did conform, and his death resulted from his having so conformed, which negligence consisted in this: The said Dunn negligently ordered plaintiff's intestate to go down into defendant's mine at a time when said mine contained a large and dangerous quantity of suffocating gas." Count 5: Practically same as 3. Count A: Same as 2, down to and including the words, "county and state aforesaid," and then concluding as count 3, except that it is alleged that Dunn negligently ordered plaintiff's intestate to go down into defendant's mine and fix a pump at a time when the pipes connected with said pump contained a large and dangerous quantity of suffocating gas.

The following charge was given at the request of the plaintiff: (B) "The court charges the jury that master and servant do not stand upon equal privileges, even when they have actual knowledge of the danger. The position of servant is one of subordination and obedience to the master, and he has the right to rely upon the superior skill of the master, and is not entirely free to act upon his suspicion of danger. If a servant being ordered into a position, obeys and is injured, he will not be held to be guilty of contributory negligence, unless the danger is so glaring that a reasonably prudent man would not have entered into it." The following charge was refused to the defendant: (76) "The court charges

the jury that there is no evidence in this case of the probable duration of Heald's life."

DORTCH, MARTIN & ALLEN, for appellant. Each count of the complaint lacked the averment that the defective condition of the mine arose from or had not been remedied or discovered owing to the negligence of the defendant, etc.—51 South. 48. As filed the complaint was subject to the demurrers for misjoinder.—161 Ala. 407; 109 Ala. 287. The court erred in admitting the testimony of Ensley had on the former trial.—*Gildersleeve v. Carraway*, 10 Ala. 260; *Mitchell v. The State*, 114 Ala. 4; *So. Ry. Co. v. Bonner*, 141 Ala. 526. It is insisted that there was no privity of estate or otherwise between the plaintiff in the former case, and in this case. —*Graves v. Flowers*, 51 Ala. 402; *Passmore v. Ellington*, 122 Ala. 564. The revival constituted an entirely new and distinct suit.—*Patton v. Pitts*, 80 Ala. 378; 87 Md. 591; 16 Cyc. 1098. The court erred in permitting it to be shown that Mr. Dunn told Mr. Heald it would be safe for him to go in there, 1st, because it was not within the issues raised by the pleadings.—1 LaB. on M. & S. sec. 449; *L. & N. v. Markee*, 103 Ala. 160. Subdivision 3, of the Employer's Liability Act, embraces negligence in giving orders only.—*M. & O. R. R. Co. v. George*, 94 Ala. 219; *Pos. T. Co. v. Hulsey*, 115 Ala. 193; *Hammond's case*, 93 Ala. 181. The court erred in sustaining objections to the questions calling for the amount of salary or wages paid for the job. The court erred in giving charge 34 for the plaintiffs.—164 Ala. 51. The court erred in refusing charges 76, and 74.—97 Ala. 220. The court also erred in refusing charge 24.—*McAdory v. L. & N.* 94 Ala. 275; *West Pratt C. Co. v. Andrews*, 150 Ala. 377; *Nevers L. Co. v. Fields*, 151 Ala. 369. This same argument is applicable to refused charges 22 and 23. Counsel

discuss motion for new trial with citation of authority, but in view of what is said in the opinion it is not deemed necessary to here set it out.

DENSON & DENSON, for appellee. Most of the assignments of error have been fully treated on former appeals and determined adversely to the appellant.—*Ala. C. C. & I. Co. v. Heald*, 154 Ala. 580; Ib. 53 South. 362. There was no misjoiner of causes of action.—*So. Ry. Co. v. McGowan*, 149 Ala. 452; *Creola L. Co. v. Mills*, 149 Ala. 480. A sufficient predicate was laid for the introduction of the testimony of Ensley had on former trial.—*Woodstock I. Wks. v. Klein*, 149 Ala. 399. The other objections to this testimony were not well taken.— *A. C. C. & I. Co. v. Heald*, 53 South. 162. The court did not err in the charges given.—Authorities *supra; Pioneer M. & M. Co. v. Smith*, 150 Ala. 359; *R. & D. R. R. Co. v. Hissong*, 97 Ala. 193. Charges will be so construed as to uphold them if capable of such construction. —*Williams v. Anniston E. & G. Co.* 164 Ala. 93. A court cannot properly instruct the jury that there is or is not evidence of a certain fact.—*Mont. St. Ry. v. Smith*, 146 Ala. 328; *New C. C. & C. Co. v. Kilgore*, 50 South. 210; *L. & N. v. Mulder*, 42 South 743. Counsel discuss other assignments of error, but without further citation of authority.

MAYFIELD, J.—This is the third appeal in this case. A statement of the facts, and some of the questions of law involved on this appeal, may be found in the reports of the former appeals. See 154 Ala. 580, 45 South. 686; 168 Ala. 626, 53 South. 162.

The case was finally tried on two counts, 3 and 5, and at the conclusion of the trial count A was added. Each count declared under the third subdivision of the em-

ployer's liability act (Code 1907, § 3910) Counts 3 and 5 are almost identical, and count A differs from those only in alleging that the noxious gases were in pipes, and not liberated in the mine, as was alleged in counts 3 and 5. To each of these counts defendant interposed demurrers, which were overruled by the court, which rulings are here urged as error. The ground insisted upon is that each count attempted to join therein two causes of action, one under subdivision 3, and the other under subdivision 1 of the employer's liability act, and that the latter cause of action was insufficiently stated, and, for that reason, that each count was bad. We do not find that any one of the counts was subject to this defect. As we construe the counts, they each only attempt to state, and did state, a cause of action under the third subdivision. While the facts of the case may have warranted a count under the first subdivision, or upon the common-law liability of the master to furnish the servant a safe place in which to work, there was no attempt to state either of such causes of action in any one of the three counts complained of. They each follow forms which have been repeatedly approved as sufficient to state a cause of action under the third subdivision. Hence there was no error in overruling the demurrer to each of these counts.

The negligence relied upon in each count was that of one Dunn in ordering the intestate to go into the mine when it or the pipes therein were filled with the noxious or suffocating gases, and this was the chiefly disputed issue on the trial. There is no dispute that Dunn had the authority to give the order which he is alleged to have given, and none that it was the duty of intestate to obey such order; nor is there any dispute that intestate went into the mine and was killed in consequence of the noxious gases therein, or which escaped from the pipes

after he entered and while he was attempting to repair a pump—the purpose of his entering the mine. The plaintiff's evidence tended to show that Dunn did give the alleged order, and that he stated to intestate, at the time, that it was safe for him to go into the mine; while the evidence of the defendant was to the contrary, tending to prove that intestate went into the mine voluntarily and at his own option or suggestion, and that Dunn did not know, or have any reason to suspect, the dangerous condition of the mine at the time intestate entered it.

The undisputed facts seem to show that these noxious gases were generated in an air receiver which was used in connection with the air compressor, compressed air being used as the motive power for operating the mine. It seems that noxious or suffocating gases were thus generated in consequence of the receiver's becoming too hot, and, when thus generated, are conveyed into the mines by means of pipes, and may be released at various points in the mines by cocks or other such devices. The evidence is undisputed that the receiver and other machinery connected with the compressor were very hot on this occasion, that some part of the machinery was out of order, which prevented the compressor and receiver from performing their functions, and resulted in heating the machinery to a very high degree, thus generating the gases which suffocated intestate while in the mine to repair the pump.

There is no dispute that the receiver and other parts of the machinery were very hot on this occasion, and that the effect of such excessive heating was to produce the gases complained of; but the evidence is in conflict as to whether or not it was reasonable to suppose that enough gas could be thus generated to render the mine unsafe. This was one of the disputed issues on the trial,

and one which the jury must have found in favor of the plaintiff, in order to support a verdict in his favor. The theory and contention of the defendant as to this matter was that the death of intestate was an inevitable accident—one that reasonable prudence and forethought could not have provided against; and consequently that the defendant or its agent Dunn, who is alleged to have given the negligent order complained of, was not guilty of any actionable negligence, because neither the danger nor the result could reasonably have been anticipated or provided against. There was, however, evidence sufficient to make this a question for the jury, and they evidently found against the contention of the defendant.

It is next insisted that the court erred in admitting the evidence on a former trial of the absent witness, Enslen. We find no error in the rulings of the trial court in this respect. The proper predicate sufficient in all respects, as has been held by this court, was laid for the introduction of such evidence. It is chiefly insisted that the evidence was not admissible because it was given on a former trial of the case, when the suit was by the original administrator, and that the suit is now being prosecuted by the administrator de bonis non. There is no doubt that there is a difference between the duties of an administrator in chief and those of one de bonis non. The actions brought by them may be different. Often there is no privity between the administration in chief and that de bonis non, and a judgment against the one representative is not binding on the other; but those rules of law do not prevent the testimony given in an action brought by the one from being admissible on a subsequent trial of the same action and for the same cause of action as that involved in the first trial—*Woodstock Co. v. Kline*, 149 Ala. 399, 43 South. 362.

[Alabama Consolidated C. & I. Co. v. Heald.]

It was ruled on the former trial of this case that the evidence of the witness Enslen that Dunn told the intestate that it was safe to go into the mine was competent, hence there was no error as to the ruling on this evidence. 154 Ala. 580, 45 South. 686; 168 Ala. 626, 53 South. 162.

The trial court properly sustained the plaintiff's objection to the question by the defendant to the witness, "What did the job pay?" It is not made to appear that the answer to this question would be relevant. It was not sufficiently connected in time, nor as to the earnings of the intestate, to make this question admissible upon the issue of the amount of damages recoverable in this action—the only purpose for which we can see that it could be relevant. What a given job would pay some one other than the deceased or at a time or for a work different from that which the deceased performed, standing alone, was not admissible, but would tend rather to confuse than to enlighten the jury on the question of the amount of damages, if any, to which plaintiff was entitled. Moreover, this witness was shown not to know what wages deceased received, nor whether he received a fixed salary. So far as appears from this record, the question of a job of another person different from the work in which the deceased was engaged was not relevant or admissible in determining the amount of salary which deceased received, or would have received had he not met his death as alleged; that is, it did not show, or tend to show, the earning capacity of the deceased. It it not made to appear from this record that the question as to what a helper receives as compensation would be competent, or would in any manner aid the jury in determining the earning capacity of the deceased. This evidence was probably offered on the theory that deceased paid the helper out of his salary, and that, therefore, it

should be deducted from the amount of the salary of the superintendent of the water company, which office the deceased at one time filled; but it was not shown that the deceased did pay the helper out of his salary. Had the evidence been offered for this purpose, the defendant should have so informed the court, and have offered it for this purpose only.

The trial court properly sustained defendant's objection to the question. "What was the salary?" The inquiry was not confined to any particular time or occasion, and, moreover, witness had previously testified that he did not know whether deceased received a fixed salary or not.

The nineteenth assignment of error cannot be considered, for the reason that the record fails to show the question upon which the objection and exception are based.

There was no error in declining to exclude the testimony of the witness Vinson on defendant's motion. No objections were interposed, or exceptions reserved, to the evidence which was sought to be excluded, and a part of it certainly was competent and admissible. The court was not required to separate the good from the bad.

Charge B given at the request of the plaintiff, appears to be copied from language used by this court in a former opinion rendered in this case; and the language in that opinion seems to have been quoted from another opinion of this court (*Smith's case,* 150 Ala. 359, 43 South. 561), and in that case from the text of Mr. Bailey's work on Personal Injuries, § 899. The questions of law involved in this charge are we think correct, and in it we observe no tendency to mislead the jury. Consequently, the trial court cannot be put in error for giving such charge.

[Alabama Consolidated C. & I. Co. v. Heald.]

If counsel for defendant conceived that such charge might have misleading tendencies, they should have sought to avoid it by having the court give an explanatory charge, such as would cure the defect.

Appellate courts will place that construction upon charges of trial courts which will sustain, rather than condemn, if the charge given is susceptible of such construction.

The trial court properly declined to instruct the jury as requested by defendant's written charge No. 76. It requested the court to instruct the jury that there was no evidence of a given fact. While trial courts may, and in some cases should, give such instructions, it has been repeatedly held by this court that the lower court will not be reversed for refusing such requested charges; and we think that the charge in question should not be made an exception to this established rule. There was in this case evidence of the probable duration of deceased's life and of his earning capacity, sufficient to warrant the submission of these questions to the jury, and to support the findings of the jury thereon. Consequently there was no error in refusing charges to the defendant seeking to take these questions from the jury.

As we have before stated, there was no attempt in the complaint to declare under subdivision 1 of the employers' liability act. Therefore there was no necessity to prove a cause of action thereunder, and the court properly declined to instruct the jury that such proof was necessary to support a verdict.

There was ample evidence in this case,, if true, to support the verdict found and returned by the jury. We cannot know or say from an examination of this record that the verdict was excessive, as some of the evidence tended to support a verdict for a much larger amount. This record shows that this question was exclusively one

[Alabama Great Southern Railway Co. v. Cardwell.]

for the jury, and we cannot say that their finding was induced by improper motives or by other matters outside of the evidence, nor that the trial court exceeded or abused its discretion in denying a new trial upon the ground that the verdict was excessive.

Finding no error, the judgment of the circuit court is affirmed.

Affirmed.

SIMPSON, McCLELLAN, and SOMERVILLE, JJ., concur.